UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____

In re:

RICKY LYNN MOORE,                           Case No. DM 15-90015
                                            Chapter 13
          Debtor.                           Hon. Scott W. Dales
_____/

## MEMORANDUM OF DECISION AND ORDER

PRESENT:    HONORABLE SCOTT W. DALES
            Chief United States Bankruptcy Judge

### I. INTRODUCTION

Ricky Lynn Moore (the "Debtor") fell behind on his mortgage, automobile, and other payments before seeking relief under chapter 13 of the Bankruptcy Code. After filing his voluntary petition on January 27, 2015, he promptly proposed, and amended, a chapter 13 plan (the "Plan," DN 2 & 12) which drew an objection from his trustee, Barbara P. Foley, Esq. (the "Trustee"). The court scheduled the contested confirmation for an evidentiary hearing which took place on June 10, 2015, in Marquette, Michigan.

By the time of the hearing, the only impediment to confirmation was the Trustee's objection to the Debtor's proposal that the Trustee pay the prepetition mortgage arrearage to his lender, River Valley Bank (the "Lender"), "through the plan," but that he would remit his current mortgage payments directly to the Lender "outside the plan," bypassing the Trustee's office.

The court took testimony from two witnesses, admitted two exhibits, and took judicial notice of the Debtor's schedules and Plan. For the following reasons, the court will sustain the Trustee's objection (the "Objection," DN 15), and deny confirmation of the Plan, without prejudice to further amendment.

## II. JURISDICTION

The United States District Court for the Western District of Michigan has jurisdiction over the Debtor's bankruptcy case as provided in 28 U.S.C. § 1334(a), but has referred the case and all related proceedings to the Bankruptcy Court pursuant to 28 U.S.C. § 157(a) and W.D. Mich. LCivR 83.2(a).  A chapter 13 confirmation hearing clearly constitutes a "core proceeding" within the scope of 28 U.S.C. § 157(b)(2)(L), over which the Bankruptcy Court has full authority to resolve the dispute.

## III. ANALYSIS

As the proponent of the Plan, the Debtor has the burden of proving that the Plan meets the requirements of the Bankruptcy Code, generally, and of §§ 1322 and 1325 more specifically. *In re Lofty*, 437 B.R. 578, 584 (Bankr. S.D. Ohio 2010).

As noted above, during the confirmation hearing the parties stipulated to most of the findings that the court would be required to make in order to confirm a chapter 13 plan, greatly assisting the Debtor in meeting his burden of proof.  For example, the Debtor's good faith in filing the petition and the Plan were never in doubt, all filing fees will be paid at the time of confirmation with funds the Trustee has on hand, the Plan does not discriminate unfairly against any class of creditors.  Moreover, the Trustee's concerns about the timing of the payment of fees for the Debtor's counsel have been resolved, and except for the dispute about who should make the current mortgage payments to the Lender, the Trustee would have recommended confirmation.  Based on its own independent review of the Plan and the docket generally, the court was also prepared to confirm the Plan, except for the controversy just mentioned.

The disputed Plan provision is set forth in the Debtor's first pre-confirmation amendment, which provides in relevant part as follows:

> The real property [commonly known as 225 Kuivila Road, Crystal Falls, Michigan] is subject to a mortgage in favor of River Valley Bank. The Taxes and insurance are escrowed with the lender. The amount of arrearage is $1,380.49. The Trustee shall pay the arrearage from Plan proceeds, but the Debtor will be paying the mortgage directly to the lender. The monthly mortgage payment is $591.00.

*See* 1st Amended Chapter 13 Plan (DN 12) at p. 1.

The Trustee urges the court to deny confirmation because the Plan proposes direct payments by the Debtor to the Lender, rather than through the Trustee, despite the historic practice in this District of requiring payments on delinquent secured debts to be paid through the standing trustee's office. She relies primarily on the text of § 1326(c), and a presumption under that statute as recognized by the Honorable Richard A. Enslen in *Jutila v. Rodgers (In re Jutila)*, 111 B.R. 621 (W.D. Mich. 1989).

Indeed, although Judge Enslen's *Jutila* opinion acknowledged the bankruptcy court's discretion in deciding who should pay claims (as between a debtor and trustee), the discretion is not unbridled, but is instead informed by considerable deference to the standing trustee's views. As Judge Enslen explained:

> . . . if the trustee feels that she can more effectively fulfill her supervisory duty over the execution of the plan by having all payments made through her, in the absence of some convincing reason either business or otherwise to the contrary, she ought to be entitled to require payments to be made directly to her.

*Jutila*, 111 B.R. at 626 n. 4 (quoting *In re Case*, 11 B.R. 843, 846 (Bankr. D. Utah 1981)).

Notwithstanding this clear direction, the Debtor does not agree that § 1326(c) creates any presumption that the Trustee should be the disbursing agent to pay creditors. Nevertheless, to assist the court in exercising its discretion, and recognizing the preference the Trustee expressed in this case by filing her Objection, the court put the onus on the Debtor to show why the

Trustee's view should not prevail. Consequently, during the evidentiary hearing the Debtor endeavored to rebut the presumption, given the way the court and the Trustee framed the issues.

The Debtor was the only witness to testify in favor of the Plan. He testified honestly, earnestly, and helpfully. In a straightforward manner, he described his prepetition financial difficulties, tracing them in large part to the illness of a former girlfriend, and to two automobiles he stretched to purchase, including one intended for her use. When the relationship soured, the Debtor was "stuck holding the bag" on the car debts. He soon learned that he would lose one of the vehicles —a truck— to repossession, so he agreed to sell it to his boss at the car repair shop where he worked, who in turn agreed to pay off the loan in exchange for title to the vehicle, plus the Debtor's promise to pay an additional $3,000.00. The Debtor found himself, in his words "robbing Peter to pay Paul," and eventually fell behind on his mortgage loan. Desperate to keep his home, he met with his bankruptcy counsel and filed a voluntary petition for relief under chapter 13. During the course of his financial distress, the Debtor started working with the Lender by sending it $150.00 per week to go toward his ongoing mortgage payment as well as a little toward his arrearage. He testified that it was easier to make weekly, rather than monthly, payments to his Lender.

On a hopeful note, the Debtor testified that he would be getting married several days after the hearing, and cited the old adage that "two can live as cheaply as one." Despite the intuitive appeal of this folk wisdom, it is not invariably true because, naturally, it all depends on the two (witness the Debtor's last romance which appears to have contributed to his financial hardship). The Debtor's fiancé, who was present in the courtroom, did not testify but the Debtor admitted, indeed emphasized, that she is bringing her own bills to the marriage. She makes approximately $28,000.00 per year as a housekeeper in a county care facility, and the record includes no

information about her debts or other expenses.  In short, it is not clear how much of her income will be used to satisfy "her own bills" and how much will be available to support the couple's new household.

The Trustee also called just one witness, Rebecca Jill Moore (no relation to the Debtor). Ms. Moore, the Controller and Operations Manager for the Trustee's office, credibly testified that in the Trustee's normal business operation, she disburses payments to creditors once a month, on the first business day, both pre and post-confirmation.  The Trustee monitors the debtors' payments by running a payment report and immediately knows if a debtor is not current on his plan payments when his name appears on a delinquency report.

Ms. Moore also explained that a debtor can monitor his own payment history and case progress on the National Data Center website on a daily basis because the Trustee's case and payment information is on that website.  In addition, the Trustee's office is (1) supervised by the United States Trustee, and (2) audited every year by an independent auditor to find any material weaknesses in their process.  None has ever been found.

When the Trustee is disbursing money to a creditor, she also has checks and balances in place to make certain that the creditor is being paid on an efficient and timely basis.  For example, if a payment is returned, the Trustee double-checks the address, updates any missing information, makes sure that particular creditor is still the servicer on the loan, voids the original check, and reissues another.

According to Ms. Moore, when a debtor's plan is within three months of completion the Trustee's office reviews the case history as well as all payments, and sends a detailed summary of this review to the creditors and the debtor, along with a notice of final cure under Fed. R. Bankr. P. 3002.1, if applicable.  If a creditor disputes this summary, the Trustee will defend it

and contact the creditor to compare records.  On the other hand, if a debtor pays a creditor directly during the plan term, the Trustee has no ability to monitor payments, no records to compare, and no capacity to dispute any discrepancies.  The uncertainty that results from permitting direct payment delays, if not jeopardizes, the discharge.

As to this particular Debtor, Ms. Moore testified that he made his February and March payment to the Trustee, but missed his April payment.  He then sent in a double payment in the month of May.  As of the date of the hearing, there was still no record of the Trustee's having received a June payment.

Ms. Moore testified that the United States Trustee recently set the Trustee's administrative fee, based on the Trustee's historical expenses, at 6.3%.  This means that for every $100.00 that the Trustee receives, she collects $6.30 as an administrative fee to be used in running her office and providing the services to debtors, creditors, the United States Trustee, and the court, as Ms. Moore described in her testimony.

In her brief, and again at trial, the Trustee referred to the analysis in *Perez v. Peake*, 373 B.R. 468 (S.D. Tex. 2007), which suggests several factors to assist the court in making the decision to allow a particular debtor to make payments directly to a creditor instead of through the chapter 13 trustee.[1]  Many of the *Perez* factors were taken from Judge James D. Gregg's decision in *In re Pianowski*, 92 B.R. 225, 226 (Bankr. W.D. Mich. 1988).[2]

---

[1] The *Perez* factors are: (1) the degree of responsibility of the debtor, as evidenced by his past dealings with creditors; (2) the reasons contributing to the debtor's need for filing a chapter 13 petition and plan; (3) any delays that the trustee might make in remitting the monthly payment to the targeted creditor; (4) whether the proposed plan modifies the debt; (5) the sophistication of the target creditor; (6) the ability and incentive of the target creditor to monitor payments; (7) whether the debt is a commercial or consumer debt; (8) the ability of the debtor to reorganize absent direct payments; (9) whether the payment can be delayed; (10) the number of payments proposed to pay the targeted claim; (11) whether a direct payment under the proposed plan will impair the trustee's ability to perform his standing trustee duties; (12) unique or special circumstances of a particular case; (13) the business acumen of the debtor; (14) the debtor's post-filing compliance with statutory and court-imposed duties; (15) the good faith of the debtor; (16) the plan treatment of each creditor to which a direct payment is proposed to be made; (17) the consent, or lack thereof, by the affected creditor to the proposed plan treatment; (18) the ability of the trustee and the court to

Like any judicially-created enumeration of factors, the list in *Perez* is a helpful aid, not a rigid formula, representing the collective wisdom of other judges.  As the Trustee candidly conceded, some of the factors are neutral, and some tend to support the Debtor's position.  Many, however, support the Trustee's view that she should serve as disbursing agent in this case, including (especially) the following:

- Factor #1 (Degree of Responsibility of the Debtor, as Evidenced by his Past Dealings With Creditors): the Debtor fell behind on his mortgage payment and car payments and has filed bankruptcy twice in the last 11 years.  These facts support the Trustee's position.

- Factor #2 (Reasons Contributing to the Debtor's Need for Filing a Chapter 13 Petition and Plan): the Debtor testified that his sole purpose in filing for relief under chapter 13 was to save his house by getting current on his mortgage loan – the very debt he now wants to pay directly into the future without the Trustee's assistance.  This factor also inclines the court towards the Trustee's position.

- Factor #8 (Ability of the Debtor to Reorganize Absent Direct Payments): the Debtor filed his Plan in order to get and stay current on his mortgage payment, it is the primary debt in his bankruptcy, and if he falls behind again, or cannot substantiate his payment history if disputed, his Plan will probably not succeed.  This factor, which stresses feasibility concerns, supports the Trustee's position.

- Factor #11 (Whether a Direct Payment Under the Proposed Plan Will Impair the Trustee's Ability to Perform Her Standing Trustee Duties): the Trustee has a duty to advise and assist the Debtor in performing his Plan, to monitor his payments, to

monitor future direct payments; (19) the potential burden on the trustee; (20) the possible effect upon the trustee's salary or funding of the U.S. Trustee system; and (21) the potential for abuse of the bankruptcy system.
[2] Although *Pianowski* involved a chapter 12 plan, the court's analysis applies to chapter 13 plans, too.

pay creditors, and to perform other duties under Fed. R. Bankr. P. 3002.1.  The Trustee argues that allowing the Debtor to pay the Lender directly will interfere with the performance of these duties because she has no way to monitor the payments or the Debtor's progress.  This factor clearly favors permitting the Trustee to serve as disbursing agent.

- Factor #14 (Debtor's Post-Filing Compliance With Statutory and Court Imposed Duties): the Debtor has missed at least two out of the five plan payments already due, corroborating the need for the Trustee's supervision in this particular case.

- Factor #18 (Ability of the Trustee and the Court to Monitor Future Direct Payments): the court credits Ms. Moore's testimony that the Trustee would have no ability to monitor the Debtor's direct payments or to aid in resolving any disputes.

- Factor #20 (Possible Effect Upon the Trustee's Salary or Funding the U.S. Trustee System): the current funding mechanism for the bankruptcy system is a "pay to play" model.  Because the Debtor derives substantial benefits from filing his chapter 13 petition —a discharge of debts upon completion of the plan, convenient and timely payment to his creditors, detailed and accessible information regarding the distributions and the progress of his case— in fairness he should have to pay the Trustee's fee.

The record offers scant evidence favoring the Debtor under the *Perez* factors.  Certainly, he filed his petition and proposed his Plan in good faith —one of the *Perez* factors— as the Trustee stipulated.  This factor, therefore, clearly supports the Debtor, but any debtor who hopes

to have a plan confirmed would have to cross this threshold. It is worth noting, too, that the Trustee's good faith in opposing the Plan is unchallenged.

It is also conceivable, as Debtor's counsel suggested, that running the payments through the Trustee's office may occasionally result in a slight delay in processing payments (the third *Perez* factor). For example, if the Debtor's payment arrives on a Friday but does not "post" until the next business day, there will of course be a two-calendar-day-gap between receipt and posting. Nevertheless, the fortuity of a Friday receipt and Monday posting (or even Tuesday posting if the following Monday is a holiday) will not occur frequently. Moreover, the grace period that the Lender offers the Debtor should apply equally to the Trustee, and will therefore mitigate the impact of any occasional delay in posting payments received just before a weekend or holiday. This factor tends only slightly to support the Debtor, who is himself occasionally late in making payments.

Finally, although the court excluded as hearsay a letter from one of the Lender's employees purportedly expressing a preference for receiving payments from the Debtor, the court is willing to infer the Lender's consent to the direct-pay proposal from (1) the lack of any objection from the Lender; and (2) the Debtor's understandable desire to curry favor with the Lender coupled with his proposal to make payments to that entity directly. In other words, the court infers that the Debtor, who has regular contact with the Lender, would not be proposing to pay the Lender directly if the Lender had expressed a preference for conduit payments through the Trustee. This *Perez* factor strongly favors the Debtor.

In considering the *Perez* factors, both for and against the Debtor's proposal, the court is not simply adding up the columns to arrive at a mathematical score. Rather, with the finger of *Jutila* admittedly on the Trustee's side of the scale, the court is balancing these considerations

and weighing some more heavily than others given its view of the testimony. In the process, the court draws on its own experience, but perhaps more on the wisdom and experience of this particular standing trustee. This court has previously followed *Jutila*, and will do so again in this case, not only because the decision emanates from our District Court, but also because its rationale is persuasive. *See* Pretrial Order dated May 6, 2015 (DN 30); *In re Vela,* 526 B.R. 230 (Bankr. W.D. Mich. 2015).

On balance, the *Perez* factors favor the presumption that the Trustee serve as disbursing agent in this case. The Debtor has not rebutted the presumption or persuaded the court to exercise its discretion in his favor on this point.

To paraphrase Judge Enslen, Congress established the default rule in chapter 13 cases that the standing trustee would pay creditors, except as otherwise provided in the plan or confirmation order, to assist trustees in performing specific statutory duties, including the trustee's duty to insure that the debtor is making the payments required under the plan,[3] to supervise execution of the plan, and to assist the debtor in connection with the case. *See* 11 U.S.C. § 1302(b). This court, guided by Judge Enslen's opinion in *Jutila* and the presumption he recognized, agrees that considerable deference should and will be given to the Trustee's views regarding who should serve as disbursing agent under § 1326(c).

Moreover, Congress set the means by which standing trustees get paid and has elected to have the individuals that avail themselves of the system pay for the service based upon the "payments received" by the trustee. *See* 28 U.S.C. § 586(e)(2) and 11 U.S.C. § 1326(c). By

---

[3] Even direct payments are considered payments under a chapter 13 plan, notwithstanding the imprecise or colloquial description of direct payments as being made "outside the plan." *In re Glenn*, No. 98-5128, 1999 WL 68570 (6th Cir. Jan. 20, 1999) (unpublished); *see also Vela*, 526 B.R. at 237 (suggesting that the phrase "inside the plan" is less precise than "through the trustee as disbursing agent").

diverting payments away from the Trustee, there are fewer "payments received" and less money available for her to perform her statutory duties in this and other assigned cases.

## IV. CONCLUSION AND ORDER

For the foregoing reasons, the court will sustain the Objection and deny confirmation of the Plan as long as it provides that the Debtor will make payments to the Lender directly, rather than through the chapter 13 Trustee. Nothing in this Order, however, will preclude the Debtor from amending his Plan to reflect today's decision, to account for the additional administrative expense associated with the Trustee's fee, to make weekly payments if he prefers, or otherwise amend it in accordance with chapter 13 and the Bankruptcy Code more generally. Finally, because the court intends to give the Debtor an opportunity to conform his Plan to the court's ruling, the court will not dismiss his case, despite the Trustee's request for this relief in her Objection.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Objection is SUSTAINED and confirmation of the Plan (DN 2 & 12) is DENIED, without prejudice to further amendment.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of Decision and Order pursuant to Fed. R. Bankr. P. 9022 upon Ricky Lynn Moore, Allan J. Rittenhouse, Esq., Courtney Roberts, Esq., and Barbara P. Foley, Esq.

END OF ORDER

**IT IS SO ORDERED.**

**Dated June 17, 2015**



Scott W. Dales
United States Bankruptcy Judge